# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINO A. PAPLEKAJ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>FCA US, LLC, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 24-cv-1717-MMA-VET<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>[Doc. No. 8] |

On November 4, 2024, Plaintiff Gino Paplekaj's ("Plaintiff") filed a motion to remand the instant action to the Superior Court of California, County of San Diego. Doc. No 8. Defendant FCA US, LLC ("Defendant") filed a response in opposition, to which Plaintiff replied. Doc. Nos. 12–13. The Court found this matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1, and thus took the matter under submission on December 3, 2024. Doc. No. 14. For the reasons below, the Court **DENIES** Plaintiff's motion to remand.

## I. Background

On or around February 25, 2016, Plaintiff purchased a 2016 Chrysler 300 automobile manufactured by Defendant. Doc. No. 1-2 at 6–15[1] ("Compl.") ¶ 1. Plaintiff alleges that the car, while covered by a warranty, demonstrated "[d]efects and nonconformities to warranty . . . within the applicable express warranty period, including but not limited to, engine defects, transmission defects, electrical defects; among other defects and non-conformities." *Id.* ¶ 12. These defects or nonconformities "substantially impair[ed] the use, value, or safety of the vehicle[,]" leaving its value *de minimis*, and "Defendant . . . failed to either promptly replace the [s]ubject [v]ehicle or to promptly make restitution in accordance with the Song-Beverly Act." *Id.* ¶¶ 13–16.

Plaintiff further alleges that "[a]lthough [he] presented the [v]ehicle to Defendant['s] . . . representative in this state, Defendant . . . and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the [v]ehicle so as to conform to the applicable warranties within 30 days . . . ." *Id.* ¶ 42. Thus, Plaintiff alleges that Defendant violated of California Civil Code Section 1793.2 subsections (a)(3), (b), and (d), and Civil Code sections 1791.1, 1794, and 1795.5 (breach of the implied warranty of merchantability) (collectively, "the Song-Beverly Act"). Compl. ¶¶ 35–53.

Plaintiff subsequently initiated this action in the Superior Court for the State of California, County of San Diego. Defendant removed this action to this Court on September 25, 2024. Doc. No. 1.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id*. "A federal court is presumed to lack jurisdiction in a

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1 | particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). The party seeking federal jurisdiction bears the burden of establishing jurisdiction. *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S 178, 182–83 (1936)).

Title 28 of the United States Code, Section 1441(a) provides for removal of a civil action from state to federal court if the case could have originated in federal court. The removal statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

### III. DISCUSSION

Defendant removed this action asserting that the Court has jurisdiction to hear it pursuant to 28 U.S.C. §1332, otherwise known as diversity jurisdiction. Doc. No. 1 at 2. Relevant to this action, Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states. . ." or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)–(2). For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the [s]tate or foreign state where it has its principal place of business . . . ." *Id.* at § 1332(c). However, "[a] limited liability company 'is a citizen of every state of which its owners/members are citizens[,]'" or country in which its owners/members are citizens. *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (quoting *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)); *Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 822–23 (9th Cir. 2024), *cert. denied*, No. 23-1261, 2024 WL 4426624 (U.S. Oct. 7, 2024) (applying the same principle to find that limited liability companies are citizens of every country in

which owners/members are citizens).

The parties do not appear to dispute that, for the purposes of jurisdiction, they hold diverse citizenships. In its notice of removal, Defendant asserts that Plaintiff is domiciled in, and a citizen of, the State of California. Doc. No. 1 ¶ 28. Defendant asserts itself to be a limited liability company whose sole owner is a publicly traded company organized under the laws of the Netherlands with its principal place of business in the United Kingdom. *Id.* ¶ 29. Thus, the parties are sufficiently diverse under Section 1332.

The parties' disagreement instead involves whether this case satisfies Section 1332's amount in controversy requirement. Under Section 1332(a), an amount greater than $75,000 must be in dispute for the Court to have diversity jurisdiction over an action. 28 U.S.C. § 1332(a). "Section 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs'" and therefore "includes attorneys' fees." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *but see Ronquillo v. BMW of N. Am., LLC,* No. 3:20-CV-1413-W-WVG*,* 2020 WL 6741317 *4 (S.D. Cal. Nov. 17, 2020) (Due to the Song-Beverly Act's statutory scheme, "[t]he Court is persuaded by Plaintiff's argument that attorney[s'] fees are part of costs within the Song-Beverly Act"). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a defendant must establish by a preponderance of the evidence—that it is more likely than not—that the amount in controversy exceeds $75,000. *Guglielmino*, 506 F.3d at 699 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 989, 404 (9th Cir. 1996)).

The parties appear to agree that here, Defendant bears the burden to prove by a preponderance of the evidence that the amount in controversy is satisfied. Doc. No. 8-1 at 12–13; Doc No. 12 at 11. In his prayer for relief, Plaintiff seeks "general, special, and actual damages," "restitution," "consequential and incidental damages," "civil penalt[ies] in the amount of two times Plaintiff's actual damages. . .," "prejudgment interest," "costs . . . and attorneys' fees," and "such other relief as the Court deems just and proper." Compl. at 9. Plaintiff alleges that he "suffered damages in a sum to be proven at trial in

an amount that is not less than $35,001.00." Compl. ¶ 21. In his motion to remand, he asserts that the $35,001.00 amount is intended to represent the total of all damages sought. Doc. No. 8-1 at 13.

In its notice of removal, Defendant puts forth several different calculations that it argues demonstrate that the amount in controversy greater than $75,000. In summary, Defendant argues that "[a]s a preliminary matter, Plaintiff alleges that they seek at least $35,000 in actual damages, plus a civil penalty of two times that amount ($70,000), plus incidental damages and attorneys' fees," in sum greater than $75,000. Doc. No. 1 at 5. Looking "[b]eyond the face of the [c]omplaint," to Plaintiff's claims under the Song-Beverly Act, Defendant also argues that the restitution Plaintiff seeks totals at minimum $29,861.75, and that including civil penalties based upon that restitution amount, Plaintiff's claims amount to over $89,000. *Id.* at 5–6. Defendant's supports its assertions through reference to its counsel's declaration in the notice of removal, which attaches the purported express warranty and original contract for the vehicle in question, among other documents. Doc. No. 1-2. Counsel declares that "[b]ased upon [his] experience and knowledge of litigating these cases involving claimed violations of the Song-Beverly Act, the amount in controversy in this case is more likely than not to exceed $75,000.00," and attaches a motion for attorneys' fees filed in another case by the attorneys now representing Plaintiff. Doc. No. 1-2 at 1–3 ("Skanes Decl.") ¶ 13; Doc. No. 1-2 at 81–99.

A.  **Restitution**

Defendant, both in its notice of removal and subsequent response in opposition to Plaintiff's motion to remand, calculates the restitution Plaintiff seeks in the amount of $29,861.75. Doc. No. 1 at 5–6; Doc No. 12 at 11.

> In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and

      other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

Cal. Civ. Code § 1793.2(d)(2)(B).

      In its notice of removal, Defendant relies on what it purports to be the Retail Installment Contract for the vehicle to calculate the restitution available to Plaintiff. Doc No. 1-2 at 77–79 ("Installment Contract"). Defendant calculates that amount as follows: "total amount paid for the vehicle []$52,050.79 . . . finance charges ($7,837.46), less theft deterrent device ($1,299) . . . less surface protection product ($1,250) . . . less optional service contract ($3,500) . . . less a rebate ($3,500[)] . . . ." Doc. No. 1 at 5; Doc No. 12 at 6. The contract supports this calculation. Installment Contract at 1–2 . However, Defendant appears to exclude other charges, such as sales tax, registration tax, and licensing fees, which may also be included in calculating restitution. Cal. Civ. Code § 1793.2(d(2)(B). Including just the sales tax (which appears to be $3,708.04), licensing fee ($283.00), and registration fees ($98), the amount of available restitution would increase by $4,089.04, indicating that the total amount of restitution likely recoverable is higher than Defendant's calculation. Installment Contract at 2.

      Plaintiff cites several cases for the proposition that "Defendant cannot merely point to the [Installment Contract] price of the [v]ehicle to establish the amount of actual damages in controversy. Rather, Defendant must also provide and consider essential facts about the purchase price and use of the [vehicle], which Defendant has failed to adequately do . . . ." Doc. No. 8-1 at 14. Because Defendant does not include, for example, any payments actually made by Plaintiff or precise data on Plaintiff's usage, Plaintiff argues the evidence is insufficient to prove the amount in controversy by preponderance of the evidence. *Id.* However, in the cases Plaintiff cites, unlike Defendant here, the respective defendants failed to prove the amount in controversy because they merely pointed to the purchase price of the car without considering any relevant charges, contract line items, or mileage deductions. *See, e.g., Savall v. FCA US*

*LLC*, No. 21CV195 JM (KSC), 2021 WL 1661051 *2 (S.D. Cal. Apr. 28, 2021); *Jackson v. Mercedes-Benz USA, LLC*, No. 5:20-CV-01681-DOC-KK, 2020 WL 7090839 *2–3 (C.D. Cal. Dec. 2, 2020); *Echemendia v. Subaru of Am., Inc.*, No. 220CV09243MCSJEM, 2020 WL 7311348 *2 (C.D. Cal. Dec. 11, 2020) ("Subaru inexplicably cites the $36,141.68 purchase price as Plaintiff's actual damages without accounting for finance charges, evidence concerning when repairs were made, or anything else that could allow the Court to reliably estimate actual damages"); *Steeg*, 2020 WL 2121508 a *4; *Chajon v. Ford Motor Co.*, No. 218CV10533RGKRAOX, 2019 WL 994019 (C.D. Cal. Jan. 8, 2019) ("Here, Defendants acknowledge that no sales contract has been located, and offer only the MSRP."); *Edwards v. Ford Motor Co.*, No. CV1605852BROPLAX, 2016 WL 6583585 *4 (C.D. Cal. Nov. 4, 2016). Here, Defendant does not merely offer the purchase price or market estimate price for the vehicle without any further calculations or explanations. Instead, Defendant cites line items in the Installment Contract, provides a copy for the Court and Plaintiff to review, and includes a mileage deduction, which the Court discusses below. Courts in this district have allowed defendants to establish a baseline for amounts in controversy with considerably less evidence. *See, e.g.*, *McDonald v. BMW of N. Am., LLC*, No. 3:17-CV-2011-CAB-BLM, 2017 WL 5843385 *2 (S.D. Cal. Nov. 28, 2017) ("Just as BMW multiplied the purchase price by three to argue in the notice of removal that Plaintiff is seeking a minimum of $314,164.50, it could have multiplied . . . [the damages alleged] by three to determine that Plaintiff seeks . . . in excess of $75,000 . . . ."); *Baumanns v. FCA US LLC*, No. 21-CV-1054 JLS (MSB), 2021 WL 5564497 *4 (S.D. Cal. Nov. 29, 2021). Likewise, Defendant needs only to prove the amount in controversy is more likely than not to exceed $75,000, not that it is a legal certainty that it will exceed that value. *Guglielmino*, 506 F.3d at 699.

Defendant also subtracts $20,477.50 as a "reasonable allowance for use," citing Cal. Civ. Code section 1793.2. Doc. No. 1 at 5–6. Defendant asserts that it "is not aware

of any repairs being performed during the relevant warranty periods. Assuming, however, Plaintiff's vehicle was subject to repair shortly before the expiration of the powertrain warranty at 60,000 miles, the mileage offset would equal $20,477.50.[2] Doc No. 12 at 6.

Plaintiff takes issue with this allowance, asserting that the 60,000-mile estimate is arbitrary and thus cannot support Defendant's calculations. Doc. No. 8-1 at 15–18 (citing *Gutierrez v. Ford Motor Co.*, No. 221CV05679MCSJPR, 2021 WL 4399517 (C.D. Cal. Sept. 27, 2021)).

> When restitution is made . . . the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity. The amount directly attributable to use by the buyer shall be determined by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity.

Cal. Civ. Code § 1793.2(d)(2)(C).

Reviewing the exhibits attached to the notice of removal, Defendant's rationale is apparent: according to Exhibit A to the complaint, "[t]he Powertrain Limited Warranty lasts for up to 5 years or 60,000 miles on the odometer, whichever occurs first, calculated from the start date of the Basic Limited Warranty . . . ." Doc. No 1-2 at 28. The Court concludes Defendant's calculation reflects the maximum number of miles Plaintiff could have driven while still covered by the Powertrain Warranty, thus generating the largest

---

[2] 60,000 miles/120,000 * $40,955 purchase price.

deduction that could be attributed to usage.³ This methodology drives the restitution amount to the lowest possible value, demonstrating that Defendant can meet the amount in controversy even under the facts most favorable to Plaintiff. This calculation is convincing, given that restitution under section 1793.2 is based upon existence of an express warranty, Cal. Civ. Code §§ 1793.2(d)(2), 1793(d)(2)(C), and the warranty cited appears to be the one that covers the defects of which Plaintiff complains.

Finally, some courts within the Ninth Circuit have gone so far as to hold that the mileage offset, for which Defendant accounts here, should "not impact the amount in controversy, which assumes that the jury will return a verdict for the plaintiff on all causes of action . . . ." *Baumanns* 2021 WL 5564497 at *4 (collecting cases and refusing to incorporate offsets into calculating the amount in controversy). Considering Defendant's conservative calculation method and relevant law, the Court finds that it is more likely than not that the potential restitution is, at minimum, the $29,861.75 that Defendant asserts, and that indeed, the amount is likely greater.

**B.    Civil Penalties**

The Court next considers civil penalties Plaintiff requests as separate from the $35,001.00 that Plaintiff asserts includes all damages, as courts have traditionally treated such penalties as their own, unique form of remedy separate from damages. *See Baumanns*, 2021 WL 5564497 at *4 (collecting cases); *Zeto v. BMW of N. Am., LLC*, No. 20-CV-1380-GPC-KSC, 2020 WL 6708061 *4 (S.D. Cal. Nov. 16, 2020) ("[C]ivil penalties are not speculative and should be included. In fact, the amount of controversy analysis may include civil penalty damages as long as they are recoverable under state law."); *but see Millan v. FCA US LLC*, No. 20CV328 JM (MDD), 2020 WL 3604132 *2 (S.D. Cal. Jul. 2, 2020) (collecting cases), *Savall v. FCA US LLC*, No. 21CV195 JM

---

³ This warranty covers the Gasoline Engine, Transmission, and Drivetrain. Doc. No. 1-2 at 28–29; Compl. ¶ 12 (alleging the defects include "engine defects, transmission defects, electrical defects; among other defects and non-conformities").

(KSC), 2021 WL 1661051 *3 (S.D. Cal. Apr. 28, 2021) (explaining that civil penalties should not be included unless a defendant can prove "likelihood that a civil penalty based on its willfulness would actually be awarded in this case, [and/or] that the full civil penalty would be awarded"); *Echemendia*, 2020 WL 7311348 *2–3 (C.D. Cal. Dec. 11, 2020).

Plaintiff argues that "Defendant . . . has proffered no evidence whatsoever that Plaintiff will receive the maximum amount of civil penalties—or, indeed, any penalties at all. Rather, Defendant merely assumes a civil penalty award." Doc. No. 8-1 at 25. However, while the Court recognizes that district courts take competing approaches in assessing what level of certainty of success is necessary to include civil penalties, the amount in controversy encompasses "all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018). It "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Likewise, by seeking civil penalties, Plaintiff necessarily puts them into controversy. Here, Plaintiff alleges in his complaint that Defendant's "failure to comply with its obligations under Civil Code [S]ection 1793.2, subdivision (d) was willful," and pleads that it is entitled to penalties under Civil Code Section 1794 Sections (c) and (e). Compl. ¶¶ 38–40. Thus, the Court determines this sufficient to include those sought penalties in calculating the amount in controversy. *See, e.g.*, *Baumanns*, 2021 WL 5564497 at *4–5.

The section of the Song-Beverly Act under which Plaintiff seeks civil penalties provides that "[i]f the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages." Cal. Civ. Code

§ 1794(c). The Song-Beverly Act also provides that "the buyer... may recover a civil penalty of up to two times the amount of damages" should the buyer establish a violation under the provision allowing it to seek replacement or restitution after the manufacturer is unable to repair their motor vehicle pursuant to Civil Code Section 1793.2(d)(2). Cal. Civ. Code § 1794(e). Penalties under subsections (c) and (e) may be sought only in the alternative to one another. *Id*. at (e)(5).

The language Plaintiff uses in his prayer for relief causes substantial difficulty in determining what value the civil penalties hold. *See, e.g.*, *Baumanns*, 2021 WL 5564497 at *4. For example, subsection (c) provides for only double the actual damages sought, not the total damages. Cal. Civ. Code § 1794(c). Thus, when Plaintiffs seek multiple types of damages, but merely numerate the "damages" to which they are entitled without "an adjective" to determine whether that signifies total damages (including incidental, consequential, and other damages) or merely actual damages, Defendant is without sufficient basis to establish the amount in controversy is met simply by multiplying the "damages" by three (damages plus twice damages in civil penalties). *Baumanns*, 2021 WL 5564497 at *4; *but see, e.g.*, *McDonald*, 2017 WL 5843385 at *2. Therefore, merely multiplying Plaintiff's $35,001.00 damages figure by three to include civil penalties will not suffice to prove that it is more likely than not that the amount in controversy will exceed $75,000. *Baumanns*, 2021 WL 5564497 at *4.

Assessing damages utilizing the calculated restitution amount, however, provides a clearer path. Using that amount, Plaintiff would be entitled to recover $29,861.75 in restitution plus $59,723.50 in civil penalties,[4] for a total amount in controversy of $89,585.25. *See id.; see also, e.g. McDonald*, 2017 WL 5843385 at *2. This exceeds the $75,000 benchmark and therefore satisfies the amount in controversy requirement.

---

[4] $29,861.75 * 2.

## C. Attorneys' Fees

Defendant argues that the Court should base its calculation of attorneys' fees upon the assertion that such fees "commonly exceed $25,000 in Song[-]Beverly cases . . ." and that "counsel representing Plaintiff in this matter . . . recently sought over $100,000 in attorneys' fees in a similar matter, even before the matter went to trial." Doc. No. 1 at 6 (citing Skanes Decl. ¶ 12); Doc No. 12 at 11. However, this argument misses the mark. Regardless of what is "common" in cases of this type, Defendant provides no facts to suggest that costs may actually rise to or exceed $25,000 in this case. *See Conrad Assocs. v. Hartford Acc. & Indem. Co.,* 994 F. Supp. 1196, 1199–1200 (N.D. Cal. 1998). While a case that reaches dispositive motions may indeed run above $100,000 in attorneys' fees, a case that settles at an Early Neutral Evaluation may not. Defendant provides no basis on which to determine what attorneys' fees may amount to in this matter—even so much as its own counsel's billing rate and the amount expended thus far. *See id.* at 1200. Thus, Defendant fails to prove, by a preponderance of the evidence, what attorneys' fees may amount to in this matter.

Regardless, Defendant proves, by a preponderance of the evidence, that even without attorneys' fees the restitution and civil penalties sought bring the amount in controversy over the $75,000. Thus, the Court has jurisdiction over the case.

## IV. CONCLUSION

Based upon the foregoing, the Court **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED**.

Dated: January 7, 2025

HON. MICHAEL M. ANELLO
United States District Judge